UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-21476-CV-WILLIAMS/REID

TOYOTA LEASE TRUST,

     Plaintiff,

v.

310 MOTOR GROUP LLC,

     Defendant.

_____/

## REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

This cause is before the Court on Plaintiff Toyota Lease Trust's ("Plaintiff" or "TLT") Motion for Preliminary Injunction (the "Motion"). [ECF No. 12]. The Motion was referred to me for a report and recommendation. [ECF No. 14]. The Undersigned held a hearing on this matter on July 6, 2023. [ECF No. 25]. For the reasons addressed below it is recommended that the Motion be **DENIED**.

## BACKGROUND

This case concerns a vehicle, specifically a 2020 Lexus LX570, VIN: JTJDY7AX9L4316893 (the "Vehicle"). On February 13, 2020, Timothy Bumper entered into a lease agreement (the "Contract") for the Vehicle with Park Place Lexus of Texas, LTD. [ECF No. 1 at ¶ 8]. Park Place Lexus of Texas, LTD. subsequently assigned the Contract to TLT, and on March 24, 2020, a Certificate of Title was issued listing TLT as the sole owner and lessor the Vehicle. [*Id.* at ¶¶ 8–9].

1

On November 7, 2022, TLT received a Notice of Claim of Lien and Proposed Sale of Motor Vehicle (the "Notice") from Defendant 310 Motor Group LLC ("310"). [*Id.* at ¶ 10]; *see also* [ECF No. 1-4]. According to the Notice, 310 had repaired the Vehicle on October 20, 2022, and an outstanding payment of $12,839.07 was still owed for the repairs. [ECF No. 1 at ¶ 10]. The Notice provided that if no one claimed the Vehicle or paid the outstanding balance it would auction the Vehicle on December 7, 2022, at 11:00 a.m. at 5421 SW 25th Ct, West Park, Florida 33023 (the "West Park Address). [*Id.*]. The Notice also included 310's telephone number and address at 323 Sunny Isles Blvd, 7 FL, Sunny Isles Beach, Florida 33160 (the "Sunny Isles Address"). [*Id.*]. The Notice also stated as follows: (1) that TLT "has a right to hearing and any time BEFORE the scheduled date of sale by filing a demand for hearing with the clerk of circuit court in the county in which the motor vehicle is held[;]" (2) that 310 "will make the vehicle available for inspection during regular business hours within 3 business days after receiving a written request to inspect the vehicle from a notice recipient[;]" and (3) that TLT "has a right to recover possession of the vehicle without instituting judicial proceeding by posting bond in accordance with subsection (5) 559.917, Florida Statutes." [ECF No. 32-3].

Rather than taking any of the above options, TLT alleges it attempted to contact 310 at the telephone number listed on the Notice, but that no one answered or returned its calls. [ECF No. 1 at ¶ 11]. After that failed, TLT sent a repossession agent to the Sunny Isles Address, where TLT asserts the repossession agent learned "that neither 310 [] nor the Vehicle was located at this address." [*Id.* at ¶ 12]. On the date and time of the auction TLT sent another repossession agent to the West Park Address. [*Id.*]. This repossession agent was also unable to locate the Vehicle at the West Park Address, and was told by a person named "Nel" that the Vehicle was not there. [*Id.*].

At the auction, 310 purchased the title to the Vehicle, and subsequently sold the Vehicle in a private sale to a third-party buyer located in the Dominican Republic for $47,000. [ECF No. 32-3 at ¶ 10–12]. On March 28, 2023, TLT received a notification from a Customs and Border Protection ("CBP") officer that the Vehicle was to be shipped out of the country on April 4, 2023. [*Id.* at ¶ 13]. After TLT informed the officer that it maintained an interest in the Vehicle, CBP seized the Vehicle. As of now, the Vehicle remains in CBP custody.

TLT filed the instant lawsuit seeking to recover the Vehicle. In the Verified Complaint, TLT asserts claims for: (1) fraud; (2) conversion; (3) violations of Florida Statute § 713.585; and (4) to quiet title to the Vehicle under the Declaratory Judgment Act, 28 U.S.C. § 2201. *See generally* [*Id.*]. TLT also filed a Motion for Temporary Restraining Order and for Preliminary Injunction, requesting the Court order that the Vehicle remain in CBP custody until a final judgment can be issued in this case. [ECF No. 12]. Judge Williams issued a temporary restraining order ("TRO") on June 22, 2023, and ordered that the Vehicle remain at the CBP facility until the TRO expires. *See* [ECF No. 14]. The TRO was set to expire on July 6, 2023. [*Id.*]. The Undersigned then held a hearing on the instant Preliminary Injunction on July 6, 2023. [ECF No. 25]. Thereafter, Judge Williams extended the TRO to July 14, 2023. [ECF No. 27]. Defendant 310 filed supplemental materials, including an affidavit from its managing member Marysol Cossola. [ECF No. 32]. TLT subsequently sought leave to file a reply to the supplemental materials 310 filed, which this Court permitted. [ECF No. 36].

## LEGAL STANDARD

"The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated." *Robinson v. Att'y Gen.*, 957 F.3d 1171, 1178–79 (11th Cir. 2020) (quoting *Northeastern Fla. Ch. Of Ass'n of Gen. Contractors v. City of*

*Jacksonville*, 896 F.2d 1283, 1284 (11th Cir. 1990)). Federal Rule of Civil Procedure 65 governs a district court's authority to issue a preliminary injunction.

To obtain a preliminary injunction, a party must demonstrate "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. Rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005)

 The Eleventh Circuit has explained that a preliminary injunction is an "extraordinary and drastic remedy" that should not be granted unless the movant has clearly satisfied the burden of persuasion as to each of the four prongs. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc); *see also Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (noting that the movant's failure to satisfy any one of the four prerequisites requires denial of the preliminary injunction).

## DISCUSSION

As an initial matter, it should be noted that since this case is before the Court on diversity grounds, Florida substantive law applies. *See Mazzoni Farms v. E.I. Dupont De Nemours & Co.*, 166 F.3d 1162, 1164 (11th Cir. 1999) (explaining Florida's choice-of-law rules apply in a diversity case); *Attorney's Title Ins. Fund, Inc. v. Regions Bank*, 491 F. Supp. 2d 1087, 1093 (S.D. Fla. 2007) (noting that "Florida law indisputably governs the substantive issues in a case where the federal court's jurisdiction is based on diversity of citizenship"). Neither party contests this.

### A. Substantial Likelihood of Success on the Merits

Generally, the substantial likelihood of success on the merits prong is considered the "most important because granting a motion for preliminary injunction would be inequitable if the movant

does not have a chance of success on the merits." *Learning Experience Sys., LLC v. Foxborough Child Care, LLC*, No. 10-cv-80561, 2010 WL 3565712, at *4 (S.D. Fla. Aug. 19, 2010). The movant's "failure to demonstrate a substantial likelihood of success on the merits may defeat the party's claim, regardless of its ability to establish any of the other elements." *Haitian Refugee Ctr., Inc. v. Christopher*, 43 F.3d 1431, 1432 (11th Cir. 1995).

TLT's fraud, conversion, Section 713.585, and Declaratory Judgment Act claims all rely on the same basic assumptions: (1) that 310 failed to provide the address of the physical location of the Vehicle in the Notice; (2) 310 misrepresented the date, time, and location of the auction, and (3) 310 failed to permit TLT to inspect the vehicle. As discussed below, however, TLT has failed to back up its assertions and establish that is has a substantial likelihood of success on the merits. 310, however, argues that TLT's claims fail because TLT did not comply with the statute governing the enforcement of liens through the sale of a motor vehicle. Fla. Stat. § 713.585.

Fla. Stat. § 713.585 governs "the procedures that mechanics who perform 'labor or services on a motor vehicle' must follow to enforce a lien by sale of a motor vehicle." *Toyano's Auto Repair Servs. v. S. Auto Fin. Co., LLC*, 331 So. 3d 186, 189 (Fla. 4th DCA 2021). For the person or entity claiming a lien under the statute for labor or services performed on a vehicle, Section 713.585 requires, in relevant part, that:

> (1) The lienor or the lienor's agent must give notice of the lien by certified mail to the registered owner of the vehicle, to the customer as indicated on the order for repair, and to all other persons claiming an interest therein or lien thereon … Such notice must contain:
>
> …
>
> (e) Contain the name, address, and telephone number of the lienor.
>
> …

(j) Contain notice that the lien claimed by the lienor is subject to enforcement pursuant to this section and that the vehicle may be sold to satisfy the lien.

…

(k) Contain the date, time, and location of any proposed or scheduled sale of the vehicle. A vehicle may not be sold earlier than 60 days after completion of the repair work.

…

(l) Contain notice that the owner of the vehicle or any person claiming an interest therein or lien thereon has a right to a hearing at any time before the scheduled date of sale by filing a demand for hearing with the clerk of the circuit court in the county in which the vehicle is held and mailing copies of the demand for hearing to all other owners and lienors as reflected on the notice.

…

(m) Contain notice that the owner of the vehicle has a right to recover possession of the vehicle without instituting judicial proceedings by posting bond in accordance with s. 559.917.

…

(o) Contain notice that a lienholder, if any, has the right, as specified in subsection (5), to demand a hearing or to post a bond.

…

(p) Contain a statement that the lienor will make the vehicle available for inspection during regular business hours within 3 business days after receiving a written request to inspect the vehicle from a notice recipient, who may present either a copy of an electronic title or a paper title as evidence of his or her interest in and right to inspect the vehicle.

…

(q) Contain the address at which the vehicle is physically located.

Fla. Stat. § 713.585(1)(e)–(q).

"It is well-settled that the mechanics lien law is to be strictly construed in every particular

[manner] and strict compliance is an indispensable prerequisite for a person seeking affirmative

relief under the statute." *Doral Collision Ctr., Inc. v. Daimler Tr.*, 341 So. 3d 424, 428 (Fla. 3d DCA 2022) (internal quotation marks and citations omitted).

Here, strictly construing 310's Notice of Claim of Lien and Proposed Sale of Motor Vehicle ("Notice"), the Notice complied with the statutory requirements listed above. *See* [ECF No. 32-3]. The Notice contained: 310's contact information; the date, time and address of the auction; that the lien was subject to enforcement under Section 713.585; an itemized statement of the charges associated with the lien; that 310 would make the Vehicle available for inspection within 3 days of receiving a written request;  and that TLT could post a bond or request a hearing in the circuit court for the county where the Vehicle was located. *See* [*Id.*]. TLT does not dispute the Notice met these requirements or that it received the Notice.

TLT instead argues that the Vehicle was not at the addresses contained on the Notice. All Section 713.585 requires is that the Notice "[c]ontain the address at which the vehicle is physically located." Fla. Stat. § 713.585(1)(q). In the affidavit 310 provided, its managing member states that "[f]rom October 2, 2022, through the date of the sale, the subject vehicle was located at either of the locations in the parking lot[s]" of the Sunny Isles Address or the West Park Address. [ECF No. 32-1 at ¶ 5]. Further, to confront TLT's assertions that 310 was not actually located at these locations, 310 provides the lease agreement to the Sunny Isles Address and West Park Address. [ECF No. 32-2]. As such, it appears the Notice complied with this requirement as well.

Now, TLT argues this Court should afford little to no weight to this affidavit because it is a self-serving affidavit "which was prepared with the benefit of having already had oral argument … [and impermissibly attempts] to shift the focus of this injunctive proceeding to TLT's alleged actions or inactions … [which] have no bearing on the accuracy of the information contained in the subject notices, a threshold issues that, if established, would invalidate 310 Motor's lien

regardless of TLT's actions or inactions." [ECF No. 36 at 2]. TLT raises a host of other concerns with the affidavit and supporting materials, including that portions of the lease agreements are redacted, and that the person identified as 310's contact on the Sunny Isles Address lease agreement is an individual convicted on conspiracy to operate an illegal gambling business and conspiracy to launder money instruments charges. [*Id.* at 3–5]. These concerns, however, are insufficient for the Court to disregard 310's affidavit at this juncture. TLT bears the burden of establishing the necessity of a preliminary injunction, and 310 is entitled to rebut TLT's assertions with the evidence at its disposal. The veracity of any assertions made in the affidavit, and the other concerns TLT raises, are issues to be addressed in discovery.

Just as the Court must strictly construe whether 310 complied with the Notice requirement, it must also evaluate whether TLT complied with its statutory remedies. In order to initiate proceedings to recover the Vehicle, TLT was limited to three remedies: (1) initiate court proceedings in the circuit court for the county in which the vehicle was held; (2) post a bond in accordance with Fla. Stat. § 559.917; or (3) pay off the balance owed on the Vehicle.

If TLT wished to physically inspect the vehicle it was required to provide 310 with a written request to do so, after which 310 would be required to produce the Vehicle for inspection within three business days after receiving the request. *See* Fla. Stat. § 713.585(14) (providing that "[a]t any time before the proposed or scheduled date of sale of a vehicle, the owner, the customer, or a person claiming an interest therein or lien thereon may request to inspect the vehicle. The lienor must make the vehicle available for inspection during regular business hours within 3 business days ***after receiving a written request*** to inspect the vehicle") (emphasis added). If TLT had done so, it could have inspected the Vehicle, and if it chose, paid 310 for any of the work done on the Vehicle, after which 310 would have been required to release the Vehicle to TLT. *See* Fla. Stat. §

713.585(17). The statute does not provide that TLT could send, without any warning, a repossession agent to 310's listed addresses to inspect (or repossess) the Vehicle.

TLT asserts that 310 and the Vehicle were not located at the listed address because it unsuccessfully attempted to reach 310 by telephone several times and because its repossession agent "learned" that neither 310 nor the Vehicle were located at the listed addresses. [ECF No. 12 at 2]. TLT does not explain how its repossession agent learned 310 was not located at the Sunny Isles address. Nor does TLT provide any affidavit from the repossession agent explaining exactly what occurred. Defendant, on the other hand, has provided an affidavit from its managing member, supported by a copy of a lease agreement, showing that 310 was located at the Sunny Isles address during the relevant time. [ECF No. 29-1 at ¶¶ 1–3]. Further, the affidavit provides that during the time in question the Vehicle was located at either of the addresses listed on 310's Notice, and that 310 never received any request from TLT to inspect the vehicle. [*Id.* at ¶¶ 5–6, 8].

Simply put, TLT has failed to establish a substantial likelihood of success on the merits. It did not request a hearing, post a bond, or properly request to inspect the Vehicle before the auction. As stated above, these statutory requirements are to be strictly construed. And based on what has been submitted to the Court, TLT has provided little evidence that 310 has engaged in fraud in relation to the transaction at issue in this case.

**B. Irreparable Harm**

To establish irreparable harm, a party must demonstrate that they will suffer an injury for which they cannot be adequately compensated if they were to prevail on the merits. *United States v. Jefferson Cnty.*, 720 F.2d 1511, 1520 (11th Cir. 1983). Regarding a request for a preliminary injunction, "[a]n injury is 'irreparable' only if it cannot be undone through monetary damages." *Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) (internal citation

omitted). "A showing of irreparable injury is the *sine qua non* of injunctive relief." *Siegel*, 234 F.3d at 1176 (internal quotation marks and citation omitted).

Here, TLT argues it will suffer irreparable harm because absent a preliminary injunction, 310 will send the Vehicle to the buyer located outside of the United States. What TLT fails to mention, however, is why this would result in harm that monetary damages could not alleviate. If TLT were to ultimately succeed on the merits of its claims, it would be entitled to monetary damages. It does not argue that the Vehicle is in some manner unique or irreplaceable. Rather, it seeks to obtain possession of the Vehicle for its value and to assess what sort of work had been done on it. The issues concerning what work had been done on the Vehicle can be addressed through the discovery process, and TLT can be compensated for the value of the Vehicle through monetary damages. Consequently, TLT has failed to satisfy this prong as well.

### C. Balance of Harm

The third prong of the preliminary injunction test requires the movant to demonstrate that the threatened injury outweighs the harm the preliminary injunction would cause the opposing party. *Chavez v. Florida SP Warden*, 742 F.3d 1267, 1271 (11th Cir. 2014).

Having found TLT has failed to show a substantial likelihood of success on the merits and that it will suffer irreparable harm, our inquiry is largely finished. It is worth noting, however, this factor does not favor TLT either. TLT contends the balance of harm weighs in its favor because "[g]ranting injunctive relief will not cause any harm to 310 Motor because it would only require [it] to establish a valid lien and foreclosure before shipping the vehicle out of the country." [ECF No. 12 at 8]. This assertion is not entirely accurate. As 310 noted at the hearing, it has contracted with a buyer in the Dominican Republic to sell the Vehicle. So, an order enjoining it from sending the Vehicle to this buyer until the end of these proceedings would subject 310 to potential liability

for breach of contract or other causes of action from that buyer. Therefore, the balance of harms here is either a draw, or favors 310. Either way, it does little for TLT's cause.

### D.  Public Interest

Lastly, TLT argues that "[i]njunctive relief is not adverse to the public interest because a repair facility should not be permitted to benefit from deceit to acquire title and then immediately seek to remove the Vehicle from the United States." [ECF No. 12 at 9]. If TLT was correct in its assertions, a preliminary injunction may well have served the public interest. As explained above, however, TLT has failed to establish any of the other requisite elements. In fact, the public interest is not served if an injunction issues, where the owner of the Vehicle failed to comply with the Florida Mechanics Lien Law. Consequently, TLT has failed to meet its burden as to this element as well.

<u>CONCLUSION</u>

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff's Motion for Preliminary Injunction [ECF No. 12] be **DENIED**. Additionally, it is further recommended that Temporary Restraining Order be extended to encompass the objection period to this Report or until the Court rules on this Report.

Objections to this Report may be filed with the district judge within **FOURTEEN** (14) days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the district judge of anything in this Report and shall constitute a waiver of a party's "right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

**SIGNED** this 14th day of July, 2023.

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc:    **U.S. District Judge Kathleen M. Williams; and**

       **All Counsel of Record**